UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ANGEL GIRON RODAS,<br><br>                               Petitioner,<br><br>v.<br><br>TODD LYONS, Acting Director, Immigration and Customs Enforcement; GREGORY J. ARCHAMBEAULT, San Diego Field Office Director, Immigration and Customs Enforcement Removal Operations; CHRISTOPHER J. LAROSE, Warden, Otay Mesa Detention Center,<br><br>                               Respondents. | Case No.:  25cv1912-LL-AHG<br><br>**ORDER DENYING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>**[ECF No. 2]** |

On July 28, 2025, Petitioner Jose Angel Giron Rodas filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 against Respondents Todd Lyons, Gregory J. Archambeault, and Christopher J. LaRose. ECF No. 1. Petitioner also moved for a temporary restraining order. ECF No. 2. He argued that Respondents have violated his Fifth Amendment right to reasonably safe conditions of confinement while in their custody. The Court issued an expedited briefing schedule and held oral argument on August 1, 2025. ECF Nos. 3, 9. For the reasons stated on the record and below, the Court **DENIES** the Motion for Temporary Restraining Order for lack of subject-matter jurisdiction.

1

## I.    LEGAL STANDARD

The requirements for securing a temporary restraining order are "substantially identical" to those needed for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). One seeking a preliminary injunction must establish that: (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The most important among these factors is the likelihood of success on the merits." *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023). "This is especially true for constitutional claims, as the remaining *Winter* factors typically favor enjoining [actions] thought to be unconstitutional." *Id*. Still, under the Ninth Circuit's "sliding scale" approach, a plaintiff who merely raises "serious questions" on the merits is still entitled to preliminary relief if the other elements are met and the balance of equities "tips sharply in the plaintiff's favor." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023). But without at least "serious questions going to the merits," we "need not consider the other factors." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

"The Fifth Amendment requires the government to provide conditions of reasonable health and safety to people in its custody." *Roman v. Wolf*, 977 F.3d 935, 943 (9th Cir. 2020). The government violates this duty when: (i) it "made an intentional decision with respect to the conditions under which the plaintiff was confined;" (ii) "those conditions put the plaintiff at substantial risk of suffering serious harm;" (iii) it "did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved . . .;" and (iv) "by not taking such measures, the [government] caused the plaintiff's injuries." *Id*. For the third element, the government's actions must be objectively unreasonable, that is "something akin to reckless disregard." *Id*. For the fourth element, a plaintiff need only prove a "sufficiently imminent danger" because a "remedy for unsafe conditions need not await a tragic event." *Id*.

25cv1912-LL-AHG

## II.    PETITIONER'S ARGUMENT

Medical records from Kaiser Permanente show that Petitioner went to the ER in April 2024, where doctors documented his chest pain, anemia, lower gastrointestinal bleeding, and lymphadenopathy. ECF No. 1-3, Ex. E ("Kaiser Records") at 32–80. This included imaging signs arguably suggestive of a malignant tumor. ECF No. 1-3, Ex. A ("Dr. Ho Letter") at 4 (emphasizing that Kaiser's radiologist noted Petitioner's angiogram as having "[l]ymphadenopathy above and below the diaphragm suspicious for neoplastic or lymphoproliferative process," which can be symptomatic of cancer). But because there were no beds available, Petitioner was sent home and told to follow up with a colonoscopy as soon as possible. *Id.*

Petitioner's colonoscopy and other continued treatment were not completed because he was arrested and charged the following month for transportation of certain aliens under 8 U.S.C. § 1324(a)(1)(A)(ii). ECF No. 1-3, Ex. G ("Criminal Docket," case no. 24cr1298-RBM) at 86–94. Petitioner pled guilty and was sentenced to time served with one year of supervised release. *Id.* Petitioner, a Guatemalan alien seeking asylum, ended up in ICE custody once he was released from criminal custody and now faces deportation.

In January 2025, Petitioner was medically screened at Otay Mesa Detention Center, where he told medical personnel he had been experiencing bloody clots from stool and a stream of blood for two weeks. ECF No. 1-3, Ex. D ("OMDC Records") at 15–31. He was referred to a licensed independent provider. *Id.* In March 2025, Petitioner told medical personnel that he was diagnosed with colon cancer in April 2024 and was suffering from rectal bleeding and pain in his abdomen and back. *Id.* A few days later, Petitioner again told personnel that he had been diagnosed with cancer and had pain and rectal bleeding. *Id.* He was told that it would be monitored. *Id.* In April 2025, Petitioner sought care for severe abdominal pain, rectal bleeding, and cramping radiating to his stomach, back, and colon. *Id.* He was referred to another independent provider and given patient education. *Id.*

At an immigration hearing in June 2025, Petitioner told the judge and ICE's counsel that he bled every day, really suffered without adequate medical care, and felt like he was

25cv1912-LL-AHG

dying little by little. ECF No. 1-3, Ex. C ("Times of San Diego News Article") at 10–14. As a demonstrative, Petitioner brought a jar of blood that he had lost that day and showed it to those present. *Id*. The immigration judge ruled that he didn't have authority to release him on bond since his conviction for transportation of certain aliens is considered an aggravated felony for which mandatory custody is required under immigration law. *Id*.; *see* ECF No. 1-3, Ex. F ("Orders Denying Bond") at 81–85 (citing INA §§ 236(c) and 101(a)(43)(N)); *see also* 8 U.S.C. §§ 1101(a)(43)(N) and 1226(c).

In July 2025, OMDC personnel took Petitioner to Sharp Medical Center. ECF No. 1-3, Ex. B ("Reisz Decl.") ¶ 7. Doctors gave him morphine, ran tests, and opined that he was anemic, bleeding inside his abdomen, and might need an operation. *Id*. A colonoscopy was not performed. *Id*. Doctors opined that Petitioner ought to tell OMDC personnel to take him to the ER if he started to feel worse. *Id*.

As of this week, Petitioner has been detained in a single room by himself each day. *Id*. ¶ 6. He has suffered from worsening symptoms, including stabbing pain in his abdomen, dizziness, headaches, blurry vision, vomiting, chest and back pain, trouble sleeping and urinating, and continued bleeding from his anus. *Id*. Petitioner has begged OMDC personnel to take him to the ER. *Id*. ¶ 8. In response, they gave him Tylenol. *Id*. ¶ 6.

Dr. Ho, a family medicine resident in San Diego first heard of Petitioner's plight through a mutual friend. Dr. Ho Letter at 4. She has since visited Petitioner at OMDC in April and June 2025. *Id*. She has also reviewed his Kaiser records with his consent. *Id*. In addition to corroborating much of what the medical records speak for themselves, she opined that "he has not been receiving anywhere near adequate care while incarcerated at Otay Mesa, and if anything, his incarceration has only further delayed proper, potentially life-saving medical diagnostics and treatment." *Id*. "He needed a colonoscopy over a year ago when his symptoms first started; he desperately needs one now," she concluded.

Thus, Petitioner argued that Respondents have violated his Fifth Amendment right to reasonable safety. As the remedy, he asked to be released from custody, subject to reasonable supervision conditions. *See* ECF No. 1. ¶ 23 ("If released, Defendants have a

range of effective means to supervise Mr. Giron Rodas, including ICE's conditional supervision program, called ISAP (Intensive Supervision Appearance Program), that relies on the use of electronic ankle monitors, biometric voice recognition software, unannounced home visits, and in-person reporting to supervise participants."). Critically, Petitioner moved for this relief under 28 U.S.C. § 2241, a writ of habeas corpus. *See* ECF Nos. 1, 2.

## III.   RESPONDENTS' COUNTERARGUMENT

Apart from arguing that Petitioner's version of events is incomplete and misleading, Respondents argued that the Court lacks subject-matter jurisdiction because Petitioner's conditions-of-confinement claim does not form a basis for relief under 28 U.S.C. § 2241, citing well-established precedent. ECF No. 6 ("Opp.") at 2, 6. In *Pinson*, for instance, two federal prisoners filed habeas corpus petitions asserting that their incarceration during the COVID-19 pandemic violated the Eighth Amendment and that the only appropriate relief was their release from custody. *Pinson v. Carvajal*, 69 F.4th 1059, 1062–63 (9th Cir. 2023). The Ninth Circuit affirmed dismissal of the petitions filed under § 2241 for lack of jurisdiction, concluding that it "has long held that the 'writ of habeas corpus is limited to attacks upon the legality or duration of confinement' and does not cover claims based on allegations 'that the terms and conditions of . . . incarceration constitute cruel and unusual punishment.' " *Id.* at 1065 (quoting *Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir. 1979)); *see id*. at 1068–69 ("[W]e have consistently applied the terms of § 2255 and § 2241 to limit claims brought under these statutory provisions to challenges to the actual execution of the sentence itself, rather than ancillary harms resulting from the conditions of confinement."). Because Petitioner's § 2241 habeas petition failed to seek relief within the Court's jurisdiction, Respondents argued that the Court should deny his temporary restraining order at the outset. *See* Opp. at 6.

## IV.   DISCUSSION

Like in *Pinson*, the Court lacks jurisdiction over Petitioner's § 2241 habeas petition since it cannot be fairly read as attacking "the legality or duration of confinement." *See Pinson*, 69 F.4th at 1065. Inasmuch as Petitioner argued that "his claims sound in

5

habeas" because "there are no constitutionally permissible conditions of confinement and that release is the only adequate remedy," this too fails. *See id.* at 1069. The "relevant question is whether, based on the allegations in the petition, release is *legally required* irrespective of the relief requested." *Id*. at 1072. Taking Petitioner's "factual allegations as true," as we must when "the government contends jurisdiction is absent over [the] habeas petition as a matter of law," the Court does not find that "no set of conditions under the present circumstances could exist that would constitutionally permit [his] detention such that the very fact of those conditions violates the Constitution or fundamental law." *See id*. at 1073 (quotation marks omitted).

Petitioner also failed to explain how relief short of release is inadequate to cure the alleged constitutional violation. Instead, this is akin to a "garden-variety" claim based on the deliberate or reckless "failure to deliver adequate medical care, which is a standard civil rights claim." *See id*.; *see also Estelle v. Gamble*, 429 U.S. 97, 105 (1976) (noting that "[r]egardless of how evidenced," deliberate or reckless "indifference to a prisoner's serious illness or injury states a cause of action under § 1983," not § 2241). Petitioner's claim ultimately "neither goes to the fact of [his] confinement nor would require immediate release if successful," so "it is outside the core of habeas." *See Pinson*, 69 F.4th at 1073. Granting a temporary restraining order for Petitioner's release is therefore inappropriate. *See id*. at 1075 ("We conclude that [Petitioner] has failed to allege facts to support his legal contention that his detention was unlawful because no set of conditions exist that would cure the constitutional violations at [his detention center]. Because [Petitioner's] claims lie outside the historic core of habeas corpus, we conclude the district court properly found it lacked jurisdiction to hear [his] petition."). District courts are "not required to convert [any] habeas petitions into civil rights actions," either. *Id*. at 1076. But of course, Petitioner "is not precluded from reasserting [his claim] in a civil rights action." *See id*. at 1064 n.6.

## V.   CONCLUSION

Accordingly, for the reasons stated on the record at oral argument and in this Order reiterating much of the same, the Court **DENIES** Petitioner's Motion for Temporary

25cv1912-LL-AHG

Restraining Order. ECF No. 2. Respondents' Motion to Seal, consisting of Petitioner's medical records at OMDC, is **DENIED AS MOOT** as the Court did not rely on them when deciding this matter. ECF No. 7. Finally, by **August 15, 2025**, Petitioner is **ORDERED TO SHOW CAUSE** in writing for why the Court should not dismiss his § 2241 habeas petition for lack of subject-matter jurisdiction, otherwise the Court will dismiss it and close this case.

      **IT IS SO ORDERED.**

Dated:  August 1, 2025

_____

Honorable Linda Lopez
United States District Judge